Case No. 23-2089 Raymond Barton v. Sheldon Neeley et al. Oral argument not to exceed 15 minutes per side. Ms. Downs for the appellant. Good morning. Good morning. Good morning. May it please the court, my name is Chelsea Downs. I am representing Mayor Sheldon Neeley in this appeal. If I may, I would like to reserve five minutes for rebuttal. Very well. Thank you. As this court knows, Mayor Neeley is appealing the district court's denial of his motion to dismiss Mr. Barton's 1983 claim on the basis of qualified immunity. Mayor Neeley was a government official acting within the scope of his duties and is entitled to qualified immunity for his actions. The plaintiff has the burden of establishing that the defendant is not entitled to qualified immunity and has failed to do so. Qualified immunity at this stage is a two-step analysis, whether the facts allege that the official's conduct violated a constitutional right, and additionally, if the constitutional right could be violated, whether their right was clearly established. Did you address the clearly established prong below? We did address the fact that I think that the argument really hinges on whether there was a constitutional violation. We were talking about a Garcetti case, and while the district court said, you know, there was no argument in that case, and while the district court said that there was not a discussion about clearly established, our position is that it cannot be clearly established where there is such disagreement about the speech at issue. We are talking about an elected official making a decision regarding a political appointee, the fire chief, who's the head of the department, and all of the speech attributed to the fire chief in his allegations, all of the speech that he claims relates directly to his position as the head of the fire department. I mean, this is an interlocutory appeal, right? So you have to concede all the facts favorable to the plaintiff.  All right, and he's claiming that the mayor was more interested in winning re-election and therefore was forced the fire chief to want to change the report about these firemen that he wanted to fire. Now, if you assume those facts, we can't say that those are the facts we have to live with for interlocutory appeal purposes, right? That is true, and one argument there is that if we look at a case like Cunningham v. Blackwell, there is not a clearly established right that permits an employee to refuse to agree with something that their direct supervisor asks of them. But for political reasons? I mean, their allegation is that the mayor asked the fire chief to change the report for the mayor's own political reasons. Now, that's not part of the official duties of the fire chief to get involved in politics, is it? The fire chief is a political position. Oh, so he has to help the campaign of the mayor running for re-election? No, Your Honor. I don't think so. That's not what I'm saying. I am saying if there is a disagreement in management, the fire chief is also...  The allegation is that he's requested that I change the report for his own political reasons. And he said, I'm not going to do that for political reasons. It's hard for me to say that that's part of his official duties, to help somebody politically. And if I may, Your Honor, on their appeal and all of their briefing, they do not allege that there is a political First Amendment issue. They are alleging solely, I believe, and we can talk to counsel during their argument, they are alleging that he was speaking in two different instances. One to Mayor Neely, he being Chief Barton. One to Mayor Neely and one to City Council about his recommendations and whether he had changed his recommendations. And I do think that that is the core of his job duties. Okay. The other problem I have with this is that this was denied. The motion for qualified immunity was denied at the motion to dismiss stage 12B6. I've written an opinion in the Flint Water case, the Girton v. State 2019 case. And it says, it is generally inappropriate for a district court to grant a 12B6 motion to dismiss on the basis of qualified immunity. And that's part of my decision in the Flint Water case, that it was premature since we don't know. There's been no factual development at all. And usually qualified immunity takes some factual development to determine whether there is a clearly established right here. Am I wrong in my holding in the Girton case or not? No, Your Honor. I think that you are correct that usually it is something that is reserved for a later date. But we also want a qualified immunity defense to be decided as early as possible. And I think here, in this case, when we are talking about protected speech alleged by the fire chief, it is directly related to his job to investigate potential misconduct and make a recommendation up the chain of command. The only speech that he alleges is speaking to his direct supervisor, the mayor, and then also to city council. And even in his complaint, he explains that city council asked for a response from the fire chief about his discipline and what discipline is going to be issued to these firefighters. What about the instruction to make a public announcement saying that he, being Chief Barden, initiated the change to the reports? Is that part of his official duties as well? I know that the mayor is telling him to do that. But is that part of his official duties to make a public announcement saying that he has decided to make a change to the reporting? As I previously noted, Your Honor, thank you for that question. But I believe that his official duty is as it relates to the discipline itself, yes. When he is talking about Mayor Neely potentially asking for him to speak to city council, yes, that could certainly be within his job duties. His job duties as the fire chief are to report to the public. The complaint doesn't say talk to city council. It says make a public announcement, which I think we have to accept that as true. It doesn't say anything about say it to city council. And he did not, in fact, make a public announcement that is alleged in his complaint. And back to the Cunningham case where it says the Sixth Circuit. I think that's his point. He didn't make the public announcement that led to him getting fired. That's the whole point of his lawsuit. And, Your Honor, I would say that under that ground, I do not think it is clearly established that the mayor couldn't ask his number one overage department to make a statement about a discipline in the case. Even if it's a lie? I mean, according to the fire chief, it would have been a lie to say these firemen did nothing wrong. He thinks, hey, they caused the death of these two minority children in the fire. And he wasn't going to change his report or his recommendation they be discharged. And the mayor was worried he'd lose union support if that came out or that stuck. I mean, that's the essence of the plaintiff's claim here. And that's what we're wrestling with. Why is his refusal to go along with what the mayor wanted to do when he felt it was not true would not be a violation of his First Amendment rights or that he was retaliated against for exercising his First Amendment rights. Yes, Your Honor, and I would agree that speaking or not speaking can be protected by the First Amendment. And I think that it is where we go with the clearly established right and whether the mayor acting to a political appointee and to ask him to speak in a united front, for example. And this is where I circle back to what Judge Griffin pointed out, though, that as a general rule, it's probably premature for us to rule on this at the 12 v. 6 stage as opposed to summary judgment. And you're saying, well, that's generally true, but this is an exception. And we're struggling with, is this really an exception? I understand, Your Honor. I believe that it is an exception. I know you do. Thank you. I think that this case comes much more down to management of a city and the reasonableness of the mayor in speaking to a political appointee and all of the actions that are alleged by the fire chief relate directly to his job to investigate, discipline, talk to his boss, and answer questions at city council. And because of those reasons, I do not believe that there is protection and that he's entitled to qualified immunity. I see that my time is almost up. We'll have your five minutes rebuttal. Any further questions at this time, Judge Gilman? Thank you. It's down, down. Good morning. Good morning, Your Honors. May it please the Court. Stacey Heinonen and Arnold Reid on behalf of the Plaintiff Appellee Raymond Barton. And to the panel's questioning this morning, this is premature at the 12 v. 6 stage. In looking at what has been alleged in the complaint, we've met all the points to go further and get into discovery in this case. Because what we have here is changing a disciplinary recommendation regarding two firefighters that would cover up racial animus underlying the deaths of the two boys, all for the benefit of the political gains of the mayor. That does not fall within Barton's job description, nor his ordinary job duties. Official duties. Isn't that the phrase the Supreme Court uses in Garcetti? Well, in Lane, it's ordinary. The Supreme Court used ordinary job duties. But even official job duties, Your Honor, because his official duties as the head of the fire department, he is making a recommendation about employee discipline of fire department personnel. But his decision is what it is. That's the recommendation. People can disagree with it. They can ignore it. They can ultimately not follow it for whatever reason. But as the chief, his recommendation stands. So this is where we enter that First Amendment retaliation territory here. Because Neely then, knowing what Barton's recommendation was, directed him on two occasions to change that recommendation. And the first one was in a private meeting between the two. And then the second, this one is very interesting, at the city council meeting. I think that's striking because, actually, to start, there's nothing in the city charter, there's nothing in this record to suggest that Barton has to attend the city council meetings. He did in this case. But what he was directed to do by the mayor is take ownership of this new report and recommendation. So functionality, I guess in terms of how it's playing out, the mayor then is taking the position of the fire department and reporting on the fire department activities by saying, this is the new recommendation with regard to these two employees. Barton then over here is saying, no, that's not what I said. What I said is different. I said these two need to be disciplined and discharged, actually, because these boys would not have died if they had done what they were supposed to do, done what they said they did. And in my investigation, Barton, that didn't occur because of racial animus. So that's where, and I think as the panel has seen, there's difficulty, particularly at this stage. What we have alleged is First Amendment retaliation. This is citizen speech. Barton even was doing that when he met privately with Mayor Neely in stating, no, I'm not going to change that recommendation, and by the way, the family is contemplating a lawsuit. This is all, if I change it, this is all going to come out anyway as part of that. So looking at it myopically, as the mayor does, of just this is supervisor and person within the executive department. It's not that. It's much broader in looking at the content and the context, as the court's required to do under the case law. So Judge Mathis, you had asked whether the issue of a clearly established right had been decided by the trial court and the district court. It had not. She determined that there needed to be much more analysis or discussion by the parties before she could reach a determination as to that. But I do think that there is enough here to state that, yes, commentary upon racial discrimination is a clearly established right. We have laws in the country protecting equality, and to violate those is a breach of the law. To speak about it then also is a breach of the law, and something that anybody or any reasonable official would understand, that that would occur. So what's different, and counsel has brought up Cunningham v. Blackwell, both in argument and in her brief, this isn't just a difference of opinion between the mayor and Chief Barton. And actually there's nothing in this record to suggest that the mayor has any sort of search and rescue experience, any sort of fire suppression experience, that would allow him to give an alternate recommendation. But nevertheless, Cunningham v. Blackwell is factually distinguishable, I think, as a condition of this dentist's employment. He was required to sign a statement that he wouldn't falsify records into the future. In that case, it was pretty clear he was falsifying records. He was cutting and pasting what residents or dental students were doing and passing it off as his own. I think both the issue of citizen speech and what Barton talked about, and the reasons for which he wouldn't change his decision, have been established to be protected by the First Amendment and discharging. Did your client plead those reasons in the complaint? Your Honor. Did he not change it because the action was racial in nature and also political? Are those allegations in the complaint? Yes, Your Honor. And thank you for asking that because that is a big chunk of Sister Council's reply brief, is that this is something new. It's not. We have a de novo standard. Part of that standard is the factual allegations are taken in favor of plaintiffs, including reasonable inferences from those. There aren't quotes in the paragraphs of our pleading, but, for example, when we're referencing the city council meeting, we state at paragraph 37, Chief Barton addressed the meeting, explained he had not changed his recommendation, and he believed that an honest response was required for the citizen complaints in paragraph 38, and, therefore, in paragraph 39, he believed that the confidence in the fire department would be undermined if city officials failed to acknowledge these readily apparent issues. That's what he said at the council meeting, but we're looking at what he stated in the complaint to see if he stated a cause of action for First Amendment retaliation. I'm a little concerned that I don't see in the complaint that he talks about the racial component or also the political motivations. I mean, I think that's underlying. Maybe that's why we need further discovery, but, still, the complaint at the 12B6 stage has to plausibly allege a cause of action. I mean, getting back to my question, does it talk about the racial issue, and does it talk about political motivation in the complaint? Yes, Your Honor. Looking at the complaint as a whole from the factual allegations through factual allegations beginning with regard to the fire that occurred and leading up through his discussion at city council, those are the allegations that form the basis of the First Amendment retaliation. We do believe that we have, under a notice pleading standard, met that requirement. However, to the extent, the district court did not dismiss it or grant dismissal on that basis of any of the claims or indicate that the- Denied dismissal. Right. But the district judge did. So, to the extent clarity is needed, then we'd request the opportunity upon remand to the district court to give instruction and allowing us the opportunity to make an amendment. Because, I mean, it is apparent from the allegations when you look at them and look at the complaint as a whole. For example, you know, paragraph 23-24, the reason why Mayor Neely requested the change initially was he informed Chief Barton he was up for re-election and his wife was as well for state representative. And he wanted to curry political support from the firefighters union. So, that recommendation needed to be changed. And Chief Barton said, no, I'm unwilling to do that. And actually, in paragraph 26, Chief Barton, he was unwilling to participate in a cover-up of firefighter misconduct that was likely motivated by racism. That's paragraph 26? Yes, Your Honor. All right. Well, that does refer to racial motivations. Yes, Your Honor. Oh, okay. So, that answers my question. Paragraph 26. Yep. Okay, thank you. And then again, at paragraph 39, acknowledging readily apparent racial issues within the city. So, you know, at this point, again, our position is we've met the necessary pleading requirements to assert a cause of action against Mayor Neely. We'd request the opportunity to amend the complaint if necessary. But apart from that, we request that the district judge's opinion on this issue be affirmed and the matter returned to the district court so we can engage in discovery in the case. So, unless the panel has any other questions of me, I... Any further questions? Judge Gilman? No. Thank you, counsel, for your... Thank you. Ms. Down, you have five minutes rebuttal. Thank you, Your Honor. I will not take the full five minutes, but if the panel has questions, please let me know. I would like to note that paragraph 26 that counsel pointed out, that in particular, Chief Barton was unwilling to participate in a cover-up of firefighter misconduct that was likely motivated by racism. These allegations speak to the potential thoughts that were in Chief Barton's head. I think that a problem with this complaint is that we do not have allegations about the free speech that he was engaging in where there could be appropriate causation attributed to Mayor Neely. So, for even 26, like I said, misconduct that was likely motivated by racism, there's not an allegation that that was communicated to city council, to Mayor Neely. It appears in my mind to simply be something that was a state of mind and a potential concern of Chief Barton. What about paragraphs 34 and 35 where it says Chief Barton reminded the mayor he wouldn't make false statements and 35 says he was reluctant to make public statements that would paper over the obvious racial dynamic related to the fire? What about those? So, Chief Barton reminded Neely that he would not make false statements. False statements about, I believe, he's talking about what his recommendation initially was or if he's changing his recommendation. That does not attribute anything to underlying racism. I thought your point was he didn't communicate anything to Mayor Neely and these two paragraphs seem to suggest that he did. Oh, I'm sorry, Your Honor. No. I was suggesting not that he didn't have any communication with Mayor Neely or the city council, not that there wasn't speech. I was saying the speech doesn't actually tie to the allegations in the complaint that relate to underlying racism. The allegations where there is a mention of racism, which I believe was Judge Griffin's question earlier, does the complaint talk about how he was alleging racism was at issue and that there was a complaint about racism from Chief Barton? Paragraph 13 talks about mentions obvious racial dynamic that goes along with paragraph 26. You said paragraph 13?  Oh, I'm sorry. So, 35 was reluctant to make public statements. You didn't say that he expressed to anyone that he wouldn't make public statements. Well, if you read 34, I mean, which comes right before it where, you know, you have to read this again. We can't just take these in isolation. One of them, he is 34. He's talking to the mayor saying, I'm not going to make false statements. The next paragraph says he doesn't want to make the false statement because of the obvious racial dynamic. So, when you read those together, doesn't that show that there was a racial component as to why he didn't want to make the false statements? Your Honor, perhaps. I think that the case here is that there is an underlying belief, perhaps, of Chief Barton of racism. I would disagree that it is clear that it is in the pleadings that that is what was alleged. And regardless of that component of it, I think that it goes back to the speech at issue and whether this is his job. And this is not a case where it is related to his job. It is the core function of his job. Is it his job to cover up for the mayor? Is that what you're saying? I'm not saying that, Your Honor. I'm saying it's... It seems like, I mean, he's saying that the mayor asked him to cover this up. And now you're saying that's part of his duties to cover up, I guess.  No, Your Honor. I'm saying that his duties are to investigate and assign discipline to employees and manage the fire department. And he is speaking about those things to his boss and his other boss, which would be the public and the city council. That's what I'm saying. And I think that in having that discussion like we spoke on earlier, Garcetti and Lane would assist in the argument of qualified immunity being appropriate because we are dealing with someone who is speaking, I think it is a core component of his speech from his job, and it is not protected. And I don't think that it can be clearly established that the mayor couldn't take action based on speech related to his core job functions. Very good. Any further questions?  Judge Gilman? Judge Mathis? All right, thank you, Ms. Thompson. Thank you, Your Honors. The case will be submitted.